UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMIAH C. SHERWOOD and MEGAN DOYLE, | ) ) ) | No. 20 C 7285 |
| Plaintiffs, | ) ) | Judge Jorge L. Alonso |
| v. | ) ) ) | |
| KRISTIN RICHARDS, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs applied for and were given reason to believe they qualified for unemployment benefits. When they did not receive those benefits, they filed suit against the Director of the Illinois Department of Employment Security. Defendant moves to dismiss. For the reasons set forth below, the Court grants the motion to dismiss.

**I.     BACKGROUND**

The following facts are from plaintiffs' amended complaint, and the Court takes them as true.

Plaintiffs Jeremiah C. Sherwood ("Sherwood") and Megan Doyle ("Doyle") are Illinois residents who have filed claims for unemployment benefits, and defendant Kristin Richards ("Richards") is the Director of the Illinois Department of Employment Security ("IDES"). Each plaintiff sought unemployment benefits in March 2020, and neither has received any money.

Specifically, Sherwood lost his job due to the COVID pandemic on March 13, 2020. Within two or three days, he applied for unemployment benefits. A few days later, Sherwood received a debit card in the mail, but the card contained no funds. Sherwood telephoned IDES

multiple times but was unable to speak to a person. In July 2020, months after he was reemployed, Sherwood finally received a return call from IDES. The caller asked whether Sherwood was back at work. When Sherwood responded that he was, the caller hung up on him. Sherwood never received benefits or any notice as to why he had not received benefits.

Doyle, too, lost her job in March 2020 and applied for unemployment benefits. On or about April 4, 2020, IDES notified her that she had successfully submitted her claim and that she would receive a debit card within approximately one week. Doyle never received the card. Doyle attempted to telephone IDES but never reached a person. She never received benefits or any notice explaining why she had not received benefits.

According to plaintiffs, they applied for benefits at a time when the unemployment insurance program was "experiencing the highest level of claims in the history of the program." (Am. Complt. ¶ 11/Docket 28 ¶ 11). Plaintiffs allege that they and others like them were denied unemployment benefits for which they were eligible, because IDES lacked "the systems necessary to process their benefits in a timely manner." (Am. Complt. ¶ 39/Docket 28 ¶ 39). Plaintiffs allege that IDES closed claims without considering the merits in order to "conceal the extent to which approved claims were not being paid." (Am. Complt. ¶ 42/Docket 28 ¶ 42). Plaintiffs allege defendant Richards is "personally aware" that IDES failed to handle the increased volume, that claims were closed without consideration of the merits and that claimants were not provided notice of the reasons or an opportunity for a hearing. (Am. Complt. ¶ 45/Docket 28 ¶ 45). Plaintiffs allege Richards "personally allowed such noncompliance with the law and Constitution to exist." (Am. Complt. ¶ 45/Docket 28 ¶ 45).

Based on these allegations, plaintiffs assert two counts against Richards. They ask this Court to order defendant to pay benefits, provide adequate systems to assess claims and offer

notice and opportunity for hearings. They also ask the Court to enjoin defendant from closing claims without considering the merits and to award compensatory and punitive damages. Defendant moves to dismiss.

## II. STANDARD ON A MOTION TO DISMISS

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680-681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-679.

## III. DISCUSSION

### A. Plaintiffs' claim under the Social Security Act

In Count I, plaintiffs seek relief under § 1983 for defendant's alleged violation of 42 U.S.C. § 503. Section 1983 supplies a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against persons acting under color of State law. 42 U.S.C. § 1983. Section 503, in turn, provides, in relevant part:

> **(a) Provisions required**
>
> *The Secretary of Labor shall make no certification for payment to any State unless* he finds that *the law of such State*, approved by the Secretary of Labor under the Federal Unemployment Tax Act, *includes provision for—*
>
>> (1) Such methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation *when due*; and
>>
>> (2) Payment of unemployment compensation solely through public employment offices or such other agencies as the Secretary of Labor may approve; and
>>
>> (3) Opportunity for a fair hearing before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied; and
>
> \* \* \*
>
> **(b) Failure to comply; payments stopped**
>
> Whenever the Secretary of Labor, after reasonable notice and opportunity for hearing to the State agency charged with administration of the State law, finds that in the administration of the law there is—
>
>> (1) a denial, in a substantial number of cases, of unemployment compensation to individuals entitled thereto under such law; or

> (2) a failure to comply substantially with any provision specified in subsection (a);
>
> The Secretary of Labor shall notify such State agency that further payments will not be made to the State until the Secretary of Labor is satisfied that there is no longer any such denial or failure to comply.

42 U.S.C. § 503 (emphasis added).

The first thing one notices about § 503 is that it binds the Secretary of Labor; it does not bind any State, including the State of Illinois. Section 503(a) tells the Secretary of Labor to "make no certification for payment to any State unless" that State's law "includes provision" for "payment of unemployment compensation when due" and "[o]pportunity for a fair hearing" for individuals "whose claims" are "denied." 42 U.S.C. § 503(a)(1) & (3). Thus, § 503 requires something of the Secretary of Labor; it requires nothing of a State. That is because unemployment compensation is a "cooperative" program between the federal government and State governments. *See Zambrano v. Reinert*, 291 F.3d 964, 971 (7th Cir. 2002) (Easterbrook, J., concurring). In such programs, Congress uses "its spending power to condition the receipt of federal funds on certain requirements" and then "directs the Secretary" of the relevant agency "to withhold federal funds" from State programs that do not "comply with [Congress's] conditions." *See, e.g., Gonzaga Univ. v. Doe*, 536 U.S. 273, 278 (2002). States that want the money from the federal government have an incentive to comply, but they are not otherwise required to comply.

What happens, then, when the law of a State does not "include provision" for payment when due or for hearings before denying unemployment compensation? Under the plain terms of section 503, the answer is that the Secretary "shall make no certification for payment" to said State. Perhaps an individual could write to the Secretary and encourage the withholding of funds to the State, but nothing in § 503 suggests an individual has a private right of action to sue the

5

State to enforce the section. *See Gonzaga*, 536 U.S. at 290 ("if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms").

The Supreme Court has said such spending-power statutes do not confer private rights of action and has "reject[ed] the notion that [the] cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Gonzaga*, 536 U.S. at 283; *see also Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 331 (2015) ("Section 30(A) [of the Medicaid Act] lacks the sort of rights-creating language needed to imply a private right of action. It is phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State's decision to participate in Medicaid."). In *Gonzaga*, the Supreme Court explained that § 1983 provides a remedy for deprivation of "*rights*, not the broader or vaguer 'benefits or interests[.]" *Gonzaga*, 536 U.S. at 283. It went on to explain that spending-power provisions that "speak only to [a cabinet] Secretary" with respect to funding are "two steps removed from the interests of individual[s]" and "do[] not confer the sort of '*individual* entitlement' that is enforceable under § 1983." *Gonzaga*, 536 U.S. at 287. Section 503, likewise, is phrased as a directive to the Secretary of Labor and says nothing about the rights of unemployment insurance beneficiaries to sue for enforcement of § 503. Thus, it would be inconsistent with *Gonzaga* to conclude that § 503 provides a private right of action (beyond the holding of *California Dep't of Human Resources Dev't v. Java*, 402 U.S. 121 (1971)).

Long before *Gonzaga*, the Supreme Court allowed an individual to sue to enjoin enforcement of a State statute that conflicted with § 503. *Java*, 402 U.S. 121. At the time, California had a statute that automatically stopped payment of previously-granted unemployment benefits if an employer appealed the initial determination of eligibility. The Supreme Court

6

concluded that the California statute conflicted with § 503's requirement that a State's law include a provision that ensures benefits are paid "when due," explaining that the phrase "when due" meant "the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions[.]" *Java*, 402 U.S. at 133. California's statute allowed benefits to be stopped after that point if the employer appealed. The Supreme Court held that the California statute allowing benefits to be stopped if an employer appealed "must be enjoined because it is inconsistent with s 303(a)(1) of the Social Security Act." *Java*, 402 U.S. at 135. Similarly, in *Zambrano*, the Seventh Circuit considered whether a Wisconsin statute conflicted with § 503's "when due" provision and concluded that it did not. *Zambrano*, 291 F.3d at 970.

Under *Java*, an individual could state a claim by alleging that an Illinois statute is inconsistent with § 503's "when due" clause. That is not, however, what these plaintiffs allege. In Count I, plaintiffs allege that defendant owed plaintiffs a duty to "process their unemployment claims in a timely manner;" "[p]romptly pay them;" and "provide notice and an opportunity for a hearing." (Am. Complt. ¶ 58/Docket 28 ¶ 58). Nowhere do these plaintiffs allege that an Illinois statute is inconsistent with § 503, so *Java* does not help them. Rather, these plaintiffs seem to allege that the State of Illinois has promulgated statutes that require prompt payment. (Am. Complt. ¶¶ 17-19/Docket 28 ¶¶ 17-19). Any claim that a State has not complied with its own statute would not be a claim over which this Court has jurisdiction.

Instead of alleging that an Illinois statute is inconsistent with § 503 and seeking to enjoin that statute, plaintiffs ask this Court, under § 1983, to force the State to process and pay claims promptly and to provide hearings. Section 503, however, does not require States to do those things. It only requires the Secretary not to certify the State for funding if that State's *laws* do

7

not provide for those things. Again, plaintiffs do not allege that an Illinois statute is inconsistent with § 503, and nothing in the text of § 503 grants a private right of action to sue a State for the relief these plaintiffs seek. Under *Gonzaga*, plaintiffs have no private right of action for the relief they seek in Count I, and this Court is not at liberty to extend *Java*.

Count I is dismissed without prejudice. The only way Count I could be amended to state a claim would be if plaintiffs seek to enjoin an Illinois statute they allege to be inconsistent with § 503.

### B. Count II

In Count II, plaintiffs seek relief under § 1983 from defendant in her individual and official capacities for violating plaintiffs' rights under the Equal Protection and Due Process Clauses. Plaintiffs seek an order: (1) requiring defendant to maintain adequate systems for determining benefits promptly and to provide hearings; and (2) enjoining defendant from closing benefit claims without consideration on the merits. Plaintiffs also seek compensatory and punitive damages from defendant in her individual capacity.

#### 1. Individual capacity

As defendant points out, she cannot be held liable under § 1983 on a respondeat-superior theory. She argues that plaintiffs' allegations fall short of alleging her personal involvement in alleged constitutional violations.

It is not enough that a supervisor knows about a constitutional violation. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument."). "An allegation that the supervisor had knowledge of a deficiency is not, without more, enough to maintain an individual liability claim under § 1983." *Taylor v. Ways*,

999 F.3d 478, 495 (7th Cir. 2021). Accordingly, plaintiffs' allegation that defendant Richards is "personally aware" (that IDES failed to handle the increased volume, that claims were closed without consideration of the merits and that claimants were not provided notice of the reasons or an opportunity for a hearing) is not enough to state a claim. (Am. Complt. ¶ 45/Docket 28 ¶ 45).

Instead, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The "supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chi.*, 856 F.2d 985, 993 (7th Cir. 1988). Here, plaintiffs allege that Richards "personally allowed such noncompliance with the law and Constitution to exist." (Am. Complt. ¶ 45/Docket 28 ¶ 45). That allegation is conclusory and does not suffice to state a plausible claim under § 1983. *Iqbal*, 556 U.S. at 680-681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement").

Accordingly, plaintiffs have failed to state a claim against defendant in her individual capacity.[1] The claim is dismissed without prejudice.

    **2.    Official capacity**

Plaintiffs also sue defendant in her official capacity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's

---

[1] Defendant points out that she did not join the IDES until August 2020, months *after* plaintiffs applied for unemployment. This fact is outside the pleadings and cannot be considered on a motion to dismiss. It affects, however, what plaintiffs can allege in an amended complaint without violating Rule 11.

9

office," which means "it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Due to the Eleventh Amendment, "the general rule is that private individuals are unable to sue a state in federal court absent the state's consent." *McDonough Assoc., Inc. v. Grunloh,* 722 F.3d 1043, 1049 (7th Cir. 2013). "State officials may be sued in federal court in their official capacities notwithstanding the state's sovereign immunity if the *Ex Parte Young* exception applies." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 518 (7th Cir. 2021).

Thus, a plaintiff seeking only injunctive relief may sue an official in her official capacity under § 1983. *Will*, 491 U.S. at 71 n. 10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State."); *see also Ex Parte Young*, 209 U.S. 123, 159-160 ("The general discretion regarding the enforcement of the law when and as he deems appropriate is not interfered with by an injunction which restrains the state officer from taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainant. In such case no affirmative action of any nature is directed and the officer is simply prohibited from doing an act which he had no legal right to do. . . . The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional. . . . [T]he officer, in proceeding under such an enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is

10

subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States. . . . [T]o prevent it ought to be within the jurisdiction of a court of equity.").

The Supreme Court has stated that in "determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002). If so, the "doctrine of *Ex Parte Young* permits" a suit to "go forward against the state [officer] in [her] official capacit[y]." *Verizon Maryland*, 535 U.S. at 648; *see also Driftless*, 16 F.4th at 518 ("Under [the *Ex Parte* Young] doctrine a plaintiff may proceed in federal court against a state official for the limited purpose of obtaining prospective relief against an ongoing violation of federal law.").

The parties agree that plaintiffs cannot obtain money from defendant in her official capacity. Such relief is barred by the Eleventh Amendment and does not fall within the *Ex Parte Young* exception. *See Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 256-57 (2011) ("*Ex Parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury."). That is why plaintiffs do not pray for money from defendant in her official capacity.

Instead, in Count II, plaintiffs seek against defendant in her official capacity three things: to enjoin her from closing benefit claims without considering the merits; to order her to maintain adequate systems for determining benefits promptly; and to order her to provide notice and an opportunity for a hearing to any claimant whose claim is not promptly granted. (Am. Complt ¶

11

72/Docket 28 ¶ 72). Defendant objects that plaintiffs lack standing to obtain such injunctive relief. The Court agrees.

Plaintiffs have alleged they applied for unemployment benefits and were given reason to think they would receive them. Specifically, Sherwood alleges that he was sent a debit card shortly after he applied. The problem was not that Sherwood was told he did not qualify for benefits; the problem was that the debit card he was sent had no funds on it. Doyle alleges that she was told she would receive a debit card but did not. These allegations do not suggest that plaintiffs' claims were denied on the merits but rather that their claims were granted on the merits.[2] Yet, they have not received the money. Plaintiffs do not allege why. Perhaps Doyle's card was lost in the mail. Perhaps Sherwood's card lacked funds due to a computer or administrative error. What plaintiffs have alleged sounds like the type of random deprivations for which a post-deprivation tort remedy would suffice, because a pre-deprivation hearing would not address this type of risk. *Parratt v. Taylor*, 451 U.S. 527, 541 & 543 (1981) (plaintiff whose property was lost "as a result of a random and unauthorized act by a state employee" failed to state a due-process claim where the state offered a post-deprivation tort remedy); *see also Vargas v. Cook Cty. Sheriff's Merit Board*, 952 F.3d 871, 875 (7th Cir. 2020) ("Random, unauthorized acts are, after all, inherently unpredictable, so a plaintiff can prevail on a due-process claim premised on this type of official action only if state law fails to provide an adequate post-deprivation remedy."). Plaintiffs have not alleged they lacked an adequate post-deprivation remedy, let alone an ongoing violation of federal law.

---

[2] Perhaps all applicants receive debit cards (or are told they will receive a debit card) regardless of whether they are approved for benefits, such that the fact that the debit card had no money (or was not received) would make it plausible that a claim was denied on the merits. Plaintiffs have not alleged that.

The prospective relief plaintiffs seek would not redress their due-process injury. *See, e.g., Doe v. Holcomb*, 883 F.3d 971, 978-79 (7th Cir. 2018). Even if this Court ordered plaintiffs' prayed-for prospective relief—requiring defendant not to close claims without considering the merits, to maintain adequate systems for determining benefits promptly and to provide notice and an opportunity for a hearing—that relief would not help plaintiffs unless they applied for unemployment again. These plaintiffs have alleged that they are employed, so the possibility that they might apply again is too remote to confer standing. *See, e.g., Doe v. Purdue Univ.*, 928 F.3d 652, 666 (7th Cir. 2019); *see also Kreilein v. Horth*, 854 Fed. Appx. 733, 735 (7th Cir. 2021). The only continuing harm plaintiffs have alleged is their failure to receive the money, which money they cannot obtain from this Court.

Nor would the prayed-for relief redress plaintiffs' equal protection claim, in which they allege others were provided benefits while they were not. The way to redress plaintiffs' equal-protection injury is to make the plaintiffs equal, i.e., provide them benefits, *Sessions v. Morales-Santana*, 137 S.Ct. 1678, 1698-99 (2017), which, of course, this Court cannot do.

Accordingly, Count II against defendant in her official capacity is dismissed for want of jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendant's motion [34] to dismiss. Count I is dismissed without prejudice. Count II against defendant in her individual capacity is dismissed without prejudice. Count II against defendant in her official capacity is dismissed for want of jurisdiction. Plaintiffs are granted leave to file an amended complaint within 28 days.

**SO ORDERED.**                                    **ENTERED: February 10, 2022**

                                                                              _____
                                                                              **HON. JORGE ALONSO**
                                                                              **United States District Judge**