IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEREMIAH C. SHERWOOD, and MEGAN DOYLE on behalf of Plaintiffs and a class ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 1:20-cv-07285<br>Hon. Jorge L. Alonso |
| KRISTIN RICHARDS, in her capacity as Director of the Illinois Department of Employment Security; ) ) ) ) ) ) | |
| Defendant. ) | JURY DEMAND |

## SECOND AMENDED COMPLAINT – CLASS ACTION

1. Plaintiffs Jeremiah C. Sherwood and Megan Doyle bring this action to secure redress for the deprivation of rights, privileges and immunities secured to Plaintiffs and to enjoin enforcement of Defendant's policies and practices as violative of the Social Security Act, 42 U.S.C. § 503(a).

2. Specifically, Plaintiffs complain that Defendant failed to process claims for unemployment benefits for Plaintiffs and others similarly situated, in violation of federal law and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and federal law.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 (general federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1367 (supplemental jurisdiction). This action is brought under 28 U.S.C. § 1983 to redress the deprivation of federal statutory and constitutional rights.

4. Venue in this District is proper under 28 U.S.C. §1391 because the events complained of occurred in material part in this District and because Plaintiffs reside in this District.

## PARTIES

5. Plaintiff Jeremiah C. Sherwood is a resident of the Northern District of Illinois.

6. Plaintiff Megan Doyle is a resident of the Northern District of Illinois.

7. Defendant Kristin Richards is Director of the Illinois Department of Employment Security ("IDES"). She has been and is responsible for the supervision and administration of Illinois' unemployment insurance program and responsible for ensuring compliance with federal requirements related to unemployment benefits including eligibility for and payment of benefits. In this complaint she is sued in her capacity as Director of IDES.

### FACTS – GENERAL

8. The Illinois Department of Employment Security is charged by law with the statutory obligation to provide unemployment benefits to residents of Illinois pursuant to a joint state-federal program providing cash benefits to eligible workers who become unemployed. Illinois' unemployment benefits are governed by the Illinois Unemployment Insurance Act, 820 ILCS 405.

9. On March 27, 2020, President Trump signed the CARES Act into law, which created new unemployment compensation programs — the Federal Pandemic Unemployment Compensation program (FPUC), the Pandemic Unemployment Assistance program (PUA) and the Pandemic Emergency Unemployment Compensation (PEUC) programs — for the states to administer.

10. Every claimant eligible for unemployment benefits — either standard benefits or the new benefits created by the CARES Act — has a statutory entitlement to such benefits, amounting to a property interest.

11. The United States Department of Labor requires the states to adhere to federal laws and guidance addressing program eligibility requirements and establishing processes that ensure accurate benefit payments. "States must continue to operate their programs, both new and existing, in conformity and compliance with federal laws and guidance." UIPL No. 23-20, dated May 11, 2020. This included the weekly certification process.

12. The Social Security Act, 42 U.S.C. § 503(a), requires, as a condition for a state to receive federal funds for its unemployment insurance programs, that the Secretary of Labor of the United States find that state law includes provision for--

(1) Such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Board [Secretary of Labor] shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Board [Secretary of Labor] to be reasonably calculated to insure full payment of unemployment compensation when due; and

(2) Payment of unemployment compensation solely through public employment offices or such other agencies as the Board [Secretary of Labor] may approve; and

(3) Opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied; and

(4) The payment of all money received in the unemployment fund of such State (except for refunds of sums erroneously paid into such fund and except for refunds paid in accordance with the provisions of section 3305(b) of the Federal Unemployment Tax Act [26 USCS § 3305(b)]), immediately upon such receipt, to the Secretary of the Treasury to the credit of the unemployment trust fund [Unemployment Trust Fund] established by section 904 [42 USCS § 1104]; . . .

(12) A requirement that, as a condition of eligibility for regular compensation for any week, a claimant must be able to work, available to work, and actively seeking work. . . .

13. The "payment of unemployment compensation when due" and "due process" standards apply to state programs not only when the Secretary of Labor certifies the programs, but are the regnant, general standard that state programs must meet on a continuous basis, and that courts may enforce at the instance of claimants. *California Department of Human Resources Development v. Java*, 402 U.S. 121 (1971); *Burtton v. Johnson*, 538 F.2d 765, 768 (7th Cir. 1976).

14. Prompt determinations and prompt payment of benefits are the core requirements of unemployment insurance. Indeed, Congress' goal in establishing unemployment benefits was to get benefits to "the unemployed worker at the earliest point which is administratively feasible." *Java*, 402 U.S. at 135. The Social Security Act requires state unemployment programs to maintain "methods of administration . . . reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1).

15. In addition, and as the Seventh Circuit noted, "the legislative history suggests that the purpose of Title III in general and section 303(a) in particular was to furnish federal money for the administrative expenses of state unemployment compensation programs as an inducement to the

states to adopt programs that would achieve the larger objects suggested above. See H.R. Rep. No. 615, 74th Cong., 1st Sess. 7, 9, 23 (1935)." *Jenkins v. Bowling*, 691 F.2d 1225, 1229 (7th Cir. 1982).

16. Appendix A to 20 C.F.R. Part 614 (section 5001 of the Employment Security Manual) requires claimants to file a claim weekly or biweekly in order to claim unemployment compensation for total or part-total unemployment. This process is referred to as "certification."

17. Even when states allow for a biweekly reporting, the claimant must answer the series of questions for each individual week.

18. The state of Illinois owes a duty to workers to act in a manner that comports with the Social Security Act, including the "when due" provision. *See Wilkinson v. Abrams*, 81 F.R.D. 52, 57 (E.D. Pa. 1978).

19. Between March 2020 and the present, the Illinois Department of Employment Security did not provide claimants with ready access to IDES staff who can answer or resolve questions concerning submission of applications and weekly certifications, status of claims, or disputes over benefits payments or overpayments.

20. In addition, Illinois law does not allow a claimant to challenge the de facto denial of a claim by closing it without payment of benefits. Illinois law only permits an appeal from a decision of a claim adjuster constituting a "determination" or "finding."

21. IDES' failure to make a determination of a claim forecloses the possibility of payment "when due" because there is no mechanism to appeal a claim that has been submitted but not yet approved or denied.

22. Between March 2020 and late 2021 (when the use of prepaid cards was discontinued), IDES used prepaid debit cards issued by a third party financial institution (5/3 Bank) in the processing of claims for unemployment insurance benefits, as follows:

    a. IDES automatically directed the issuance of a debit card when a new claim for unemployment insurance benefits was received.

    b. The issuance of a debit card did not mean one's unemployment claim had

been *approved*, but only that it was *received* by IDES.

    c.    If the claim was allowed for a particular period, funds were assigned to the debit card, so they could be used by the claimant.

    d.    If the claim was not allowed, funds were not assigned to the debit card.

23.    The failure to assign funds to a debit card constituted, as a practical matter, the denial of a claim, which should have resulted in notice of the denial, a statement of reasons for the denial, and an opportunity for a hearing concerning the denial.

24.    On many occasions, however, including the Plaintiffs' cases, no determination was made and no notice, statement of reasons, or opportunity for hearing was provided.

25.    There was no rational reason for depriving Plaintiffs and many other claimants of a determination, notice, statement of reasons, or opportunity for hearing.

26.    Rather, those claimants were deprived of their rights arbitrarily, because IDES was faced with more claims than it could process, and because it did not have systems in place that would automatically issue a negative determination and a notice explaining appeal and hearing rights if a claim was not allowed.

27.    On information and belief, IDES desired to make its claims processing statistics appear better than they actually were.

## FACTS RELATING TO PLAINTIFFS

28.    Mr. Sherwood was laid off on March 13, 2020 as a result of his employer, a hotel, being affected by the COVID-19 pandemic and having limited business.

29.    Mr. Sherwood regained his employment on May 1, 2020.

30.    Mr. Sherwood filed for unemployment benefits when he was laid off, within 2 or 3 days.

31.    Mr. Sherwood was eligible for unemployment benefits.

32.    Mr. Sherwood received a debit card in the mail within a couple of days, but it had no funds on it. As noted above, this signified that his claim had been received by IDES, but not that it

had been approved.

33. Mr. Sherwood never received a UI Claimant Wage Information Sheet.

34. Mr. Sherwood called and emailed IDES on multiple occasions concerning the nonpayment of his benefits.

35. In July 2020, Mr. Sherwood finally got a call back. The caller asked if he was back to work, which he was by that time, and then hung up without addressing Mr. Sherwood's claim.

36. On one occasion in October 2020 Mr. Sherwood received a voicemail message from IDES that contained an invalid callback number.

37. Mr. Sherwood has received no benefits.

38. Mr. Sherwood has received no determination regarding his claim for benefits.

39. Mr. Sherwood has received no notice or information as to why he has not received benefits, preventing him from requesting administrative review of any denial.

40. Mr. Sherwood's claim was, as a practical matter, denied without any notice or statement of the basis for such denial, thus resulting in no payment of benefits to an eligible claimant, no notice, and no avenue to appeal the non-decision or de facto denial as no determination was made.

41. Plaintiff Megan Doyle was furloughed from her job as an employee of a real estate firm as a result of the COVID pandemic, from March 2020 until July 2020.

42. Ms. Doyle promptly applied for unemployment benefits on-line and was notified that she had successfully submitted her claim as of April 4, 2020.

43. Ms. Doyle was eligible to receive unemployment benefits.

44. Ms. Doyle was informed that she would receive a debit card in about a week, but she did not receive one.

45. When she attempted to certify Ms. Doyle received messages that she could not certify on-line and had to call IDES.

46. When Ms. Doyle called, she would get an automated system which prevented her from

speaking to a live person. Eventually she got a message that too many people were attempting to use the system so no one was available. Ms. Doyle was not able to leave a message.

47. On other occasions Ms. Doyle got a busy signal.

48. Repeated attempts were fruitless.

49. Ms. Doyle has not received benefits.

50. Ms. Doyle has received no notice or information as to why she has not received benefits, preventing her from requesting administrative review of any denial.

## FACTS – CONDUCT OF DEFENDANT

51. In addition to Plaintiffs, thousands of other Illinois residents were denied unemployment compensation benefits for which they applied and were eligible, without due process.

52. These persons have not received benefit payments, have not received information about their benefit claims, have not received a determination denying benefits (which they could appeal) and have not received any opportunity for a hearing.

53. This amounts to a de facto denial of their claims, without due process.

54. IDES has willfully and unreasonably prevented claimants from submitting their required weekly certification for unemployment benefits, thereby depriving the Plaintiffs and others similarly situated of their unemployment compensation and additional federal compensation during the COVID-19 pandemic.

55. IDES failed to timely provide unemployment benefits.

56. IDES failed to make determinations as to eligibility for benefits.

57. Tom Chan, then acting director of IDES, stated in a June 18, 2020 meeting of the Illinois Security Advisory Board that IDES was receiving around 200,000 calls from unique claimants every week but "only ever answering about 15% of those calls." And in minutes from a September 17, 2020 meeting IDES Board member Trina Taylor acknowledged "reductions in payment and determination efficiency."

58. In a March 4, 2021 hearing before Illinois House of Representatives, state Rep. Amy

Elik told Defendant that "[t]he difficulties my constituents have had reaching the call center have gone on for 13 months now and has not getting better." Defendant acknowledged as much in a March 2021 interview, confirming that in March 2021 there were about 100,000 phone numbers in IDES' callback queue.

59. Defendant Richards, based on statements to the news media (e.g., Jason Knowles and Ann Pistone, "IDES acting director responds to Illinois unemployment COVID-19 benefits delays, fraud criticism," ABC7 interview, Wednesday, October 21, 2020):

    a. Is personally familiar with and in charge of IDES' failed efforts to handle the increased volume of claims.

    b. Is personally aware that claims are being not paid, without issuance of a determination, notice, or opportunity for hearing or appeal.

60. Defendant's conduct resulted in the deprivation of Plaintiffs' federal due process rights.

## CLASS ALLEGATIONS

61. Plaintiffs bring this action on behalf of a class, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3).

62. The class consists of (a) all individuals residing in Illinois (b) who applied for unemployment compensation, Federal Pandemic Unemployment Compensation, Pandemic Unemployment Assistance and/or Pandemic Emergency Unemployment Compensation benefits (c) at any time between March 1, 2020 and the present, (d) were not paid benefits within 28 days and (e) were not sent notice of an adverse determination and an opportunity for a hearing.

63. Excluded from the class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, Plaintiffs' counsel and their employees and members of their immediate family.

64. Plaintiffs may alter the class definition, including the period of time referred to in part (d) of the definition, to conform to developments in the case and discovery.

65. Class members can be readily identified. The records of IDES or the third party financial institution show the receipt of a claim (among other things, the issuance of a debit card shows receipt of a claim) and whether payment of the claim was made (which at the time was made by assigning funds to the debit card). If a claim was received, not paid, and IDES cannot show that the claimant was notified of an adverse determination, the person is in the class.

66. The class includes thousands of persons and is so numerous that joinder of all members is not practicable.

67. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the Illinois Department of Employment Security has failed to pay claims without a prompt determination, notice, and opportunity for hearing;

    b. Whether IDES has engaged in the practice of closing claims for unemployment compensation benefits without an adverse determination, notice and opportunity for hearing, in order to improve its claims processing statistics.

68. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

69. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class action litigation.

70. Certification under Fed. R. Civ. P. 23(b)(2) is appropriate because Defendant has acted or failed or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

71. Alternatively, a class action is superior for the fair and efficient adjudication of this matter, justifying certification under Fed. R. Civ. P. 23(b)(3), in that individual actions are not economically feasible and in that there is no reason why the facts relating to Defendant's conduct

should be litigated repeatedly for individual class members.

## COUNT I – VIOLATION OF THE SOCIAL SECURITY ACT

72. Plaintiffs incorporate paragraphs 1-71.

73. Plaintiffs and others similarly situated filed claims for unemployment benefits but have not received either benefit payments or a written determination of the denial of such benefits, with notice of the reasons and opportunity for hearing.

74. Illinois law requires a "finding" and "determination" of a claim for unemployment benefits, which triggers the right to a hearing and judicial review. 820 ILCS 405/701 and 405/702.

75. Illinois law does not provide for a hearing or judicial review if IDES simply does not pay a claim, without issuing a determination and a statement of reasons for denial.

76. Defendant owed Plaintiffs and others similarly situated duties to:

   a. Process their unemployment claims on the merits in a timely manner;

   b. Promptly pay them unemployment compensation benefits and federal benefits to which they are found to be eligible;

   c. If a claim is not granted, to provide notice and an opportunity for a hearing concerning the validity of the reasons for not granting it.

77. Defendant violated and continues to violate the Social Security Act and 42 U.S.C. §1983 by failing to comply with such duties.

WHEREFORE, Plaintiffs request that the Court:

   i. Declare that Defendant's policies, practices, and customs in administering unemployment benefits violate 42 U.S.C. § 503(a)(1) and (a)(3);

   ii. Enjoin Defendant from failing to provide a determination, notice, and an opportunity for hearing if an unemployment claim is not promptly paid;

   iii. Award Plaintiffs' litigation costs and attorney's fees, pursuant to 42

U.S.C. §1988; and

    iv.    Grant such other and further relief as this Court deems proper under the circumstances

## COUNT II – VIOLATION OF FEDERAL DUE PROCESS AND EQUAL PROTECTION

78. Plaintiffs incorporate paragraphs 1-71.

79. Plaintiffs Doyle and Sherwood and those similarly situated assert a claim pursuant to 42 U.S.C. §1983 for violations of their federal due process and equal protection rights under the Fourteenth Amendment to the United States Constitution.

80. Plaintiffs Doyle and Sherwood and members of the putative class have a legitimate claim of entitlement to, and therefore a protected property interest in, having their initial claims for unemployment insurance benefits promptly examined and determined by IDES, resulting either in payment of unemployment insurance benefits or an appealable determination that they are not entitled to benefits.

81. Defendant violated the rights of Plaintiffs and others similarly situated to due process, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, by:

    a.    Failing to either promptly process and pay their unemployment claims or issue a determination and provide notice and an opportunity for hearing to anyone whose claim was not promptly paid, so that they may contest the reasons for nonpayment; and

    b.    Failing to provide an adequate post-deprivation remedy, in that Illinois law does not permit judicial review of anything other than a determination.

82. Defendant's conduct and practice violates both procedural and substantive due process.

83. It violates procedural due process because claimants do not receive notice of the reasons for not granting them unemployment benefits, and an opportunity to be heard concerning such reasons, either before or after their claims are rejected.

84. In addition, unreasonable delay results in the wrongful deprivation of benefits to claimants violates due process. *Fusari v. Steinberg*, 419 U.S. 379, 389 (1975).

85. It violates substantive due process and deprives claimants equal protection of the laws because there is no rational basis for the denials, which are merely an administrative device implemented to reduce the number of pending claims.

86. It violates equal protection because there was no rational basis for giving some claimants no determination, statement of reasons or opportunity for hearing.

87. It has long been established that when states elect to participate in joint federal-state benefits programs, the benefits constitute a property interest that must be administered in compliance with the Due Process and Equal Protection Clauses. *Goldberg v. Kelly*, 397 U.S. 254 (1970). This applies to unemployment compensation benefit programs. *California Department of Human Resources Development v. Java,* 402 U.S. 121 (1971); *Turner v. Dep't of Emp. Sec.*, 423 U.S. 44 (1975); *Burtton v. Johnson*, 538 F.2d 765, 768 (7th Cir. 1976).

88. Plaintiffs lack, and Illinois law fails to provide, an adequate post-deprivation remedy in violation of Plaintiffs' federal due process guarantees.

89. Defendant violated 42 U.S.C. §1983 by denying Plaintiffs federal due process and equal protection rights, including the failure to provide an adequate post-deprivation remedy.

WHEREFORE, Plaintiffs request that the Court:

   i. Enjoin Defendant from failing to provide a determination, notice and an opportunity for hearing to any claimant whose claim is not promptly granted;

   ii. Award attorney's fees, litigation expenses and costs (42 U.S.C. §1988); and

   iii. Grant such other and further relief as this Court deems proper under the circumstances.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

Anthony J. Peraica (ARDC 6186661)
Jennifer Hill (ARDC 6284880)
**ANTHONY J. PERAICA & ASSOCIATES, LTD.**
5130 S. Archer Avenue
Chicago, Illinois 60632
(773) 735-1700
support@peraica.com
tony@peraica.com
jhill@peraica.com

## JURY DEMAND

Each Plaintiff demands a trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

Anthony J. Peraica (ARDC 6186661)
Jennifer Hill (ARDC 6284880)
**ANTHONY J. PERAICA & ASSOCIATES, LTD.**
5130 S. Archer Avenue
Chicago, Illinois 60632
(773) 735-1700
support@peraica.com
tony@peraica.com
jhill@peraica.com

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

Anthony J. Peraica (ARDC 6186661)
Jennifer Hill (ARDC 6284880)
**ANTHONY J. PERAICA & ASSOCIATES, LTD.**
5130 S. Archer Avenue
Chicago, Illinois 60632
(773) 735-1700
support@peraica.com
tony@peraica.com
jhill@peraica.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiffs hereby demand that Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiffs, the events described herein, and any third party issuing debit cards. These materials are likely very relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiffs demand that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

Anthony J. Peraica (ARDC 6186661)
Jennifer Hill (ARDC 6284880)
**ANTHONY J. PERAICA & ASSOCIATES, LTD.**
5130 S. Archer Avenue
Chicago, Illinois 60632
(773) 735-1700
support@peraica.com
tony@peraica.com
jhill@peraica.com

## **CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, hereby certify that on March 10, 2022, a copy of the foregoing document was filed via the CM/ECF system, causing service on all counsel of record.

/s/ *Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 6207473)
Matthew J. Goldstein (ARDC 6339033)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

Anthony J. Peraica (ARDC 6186661)
Jennifer Hill (ARDC 6284880)
**ANTHONY J. PERAICA & ASSOCIATES, LTD.**
5130 S. Archer Avenue
Chicago, Illinois 60632
(773) 735-1700
support@peraica.com
tony@peraica.com
jhill@peraica.com